# CASES

## ARGUED AND DETERMINED

### IN THE

# HIGH COURT OF ERRORS AND APPEALS

### FOR THE

## STATE OF MISSISSIPPI.

---

### JANUARY TERM, 1852.

23 251
80 52

## DOE, ex dem. W. H. WYNNE et al. *vs.* MICHAL WYNNE.

A will was made by W., since deceased, in the state of Tennessee, devising all his real and personal estate to his wife, and the decedent subsequently acquired real estate situated in this state, and at the time of the execution of his will the law of the state where it was made, did not give the testator the power or capacity to convey after-acquired lands, but our statute grants the power to the testator to devise after-acquired property. *Held*, that the rights of the parties to the real estate conveyed situated in this state, must be determined by the law as it existed here at the time of the execution of the will, and the intention of the testator ought to prevail.

In the state where the will was executed at its date, the intention of the testator could not be carried into effect, because the testator had no power by the law of the state to make such a devise.

A will does not take effect until after the testator's death, and if he use general words conveying his whole estate, all that he has at his decease will pass thereby, and this is upon the presumed intention, that he knew it was not to take effect until after his death, for which event he was preparing for the disposition of his property.

Under the common law, the reason why a general gift of the testator's real estate did not pass all he had subsequently acquired after the date of his will, was not the want of intention, but because under the law his intention could not be carried out for want of power or capacity in the testator to make such a devise.

The will in this case clearly shows the intention of the testator, for after directing the payment of all his debts he bequeaths to his wife "all the

balance of his property both real and personal to the exclusion of all others ; " and language clearer or more explicit could not be used to show an intention to devise to his wife all the real estate of which he might die seized, regardless of the date of acquisition by him.

ON appeal from the circuit court of De Soto county; Hon. Hugh R. Miller, judge.

The opinion of the court contains a sufficient statement of the facts of the case.

*Buckner & Anderson; Mayes & Anderson*, for appellants.

*Scruggs & Walter*, on the same side.

*J. F. Trotter*, for appellees.

*Walton & Craft*, on the same side.

Mr. Justice YERGER delivered the opinion of the court.

Albert H. Wynne departed this life in the state of Tennessee, on the ―― day of June, in the year 1849. In the year 1829, when he was in good health, he executed his last will and testament, all in his own handwriting, by which, after providing for the payment of his debts, he declares, Item 2. I give to my much beloved wife, Michal Wynne, all the balance of my property, both real and personal; to have and to hold, to her own benefit, to the exclusion of all others." At the date of this will, the testator owned a small tract of land in Tennessee, worth not more than $300 or $400, and about $20,000 worth of personal property. He subsequently disposed of that tract of land, and, in the year 1840 or 1841, bought the land in controversy, situated in De Soto county, in the state of Mississippi. The plaintiffs, who are his heirs at law, claim the land as such heirs at law. The defendant, his widow, claims it by virtue of the above recited will, which was admitted to probate, both in Tennessee and Mississippi. The deceased, during his last illness, several times stated to his friends, when three or more were present, that " his will had long been made, and disposed of his whole property,

contained but a single clause, and that at his death it gave his whole estate to his wife." The testator had no children at the date of the will, and continued childless till his decease. It is also admitted at the date of his will that the common law on the subject of wills prevailed in Tennessee, and that the same was afterwards altered by statute, so as to permit a party to devise lands of which he was not seized at the date of the will.

These facts in the case are all agreed, so that the question presented for our consideration is entirely legal in its character. That question is this, — Can the defendant, the devisee in the will, hold the lands acquired by the testator subsequent to the date of the will to the exclusion of the heirs at law?

As the land is situated in this state, the rights of the parties to it must be determined by the laws of Mississippi, although the testator was domiciled in Tennessee at the date of the will, and at the time of his decease. Story on Conflict of Laws, § 474. See Jarman on Wills, 1, and notes.

As this is a case of the first impression in our courts, it is a matter of more interest and requires a greater degree of consideration than ordinary, in order that the rule to be established may accord with the policy of our laws, and harmonize with the intention of the legislature.

At the common law, as is well known, a devise of lands could not be made. The reason for this rule, it is said, grew out of the system of feuds prevalent in England, and which prohibited the alienation of lands by deed without the consent of the feudal lord, or by devise, lest the lands might pass into the hands of some one unable to render the feudal services required by the original investiture. 2 Black. Com. 374.

The law of England thus stood until the statute of 32 Henry 8, ch. 1, explained by 34 Henry 8, ch. 5, which enacted, " That all persons (except *femes covert*, &c.) being seized in fee simple, might, by will and testament in writing, devise to any other person," &c. 2 Black. Com. 375.

The construction which was early put upon this statute by the judges was, that to authorize a devise of lands by will, it was requisite that the testator should be seized in fee at the

date of the will; and hence, it was always held that a will, which on its face showed a clear intention to convey after-acquired lands, even where the words of the will were express to that effect, was inoperative and void as to such lands for want of power in the testator to make the devise. Gilbert on Devises, 136 – 138; 1 P. Wms. 629 ; 4 Rawle, 323.

Upon examining the cases, it will be found, then, that however clear and manifest the intention of the testator may have been to convey after-acquired lands, it has been uniformly held, that such interest could not prevail or be carried into effect, because there was no capacity or power in him to make the devise.

To remedy this inconvenience, our statute of wills passed in 1831, provided that " Every person (except, &c.) shall have power, at his or her will and pleasure, by last will and testament, or codicil in writing, to devise all the estate, right, title, and interest in possession, reversion, or remainder, which he or she hath, or at the time of his or her death shall have, of, in or to lands, tenements, &c., or goods and chattels and personal estate of every description whatsoever," &c. Hutch. Code, 649.

It will be seen, then, from this statute, that the power to devise cannot be questioned in this state. The power certainly exists to convey by will lands acquired after the date of the will. The only question which can arise here is as to the interest of the testator ; and whatever that interest may be, it must prevail as well in relation to wills of realty as of personalty.

" Wills," said Lord Mansfield, in 4 Burrows, R. 2512, " are ambulatory till the death of the testator. If the testator let it stand till he dies, it is his will; if he does not suffer it to stand, it is not his will. Every testator knows this to be the law, and also that his will does not take effect till his death. It is the property of which he may die seized that he is seeking to dispose of, and accordingly it has been always held in relation to personal estate, that if he use general words conveying his whole estate, all that he has at his decease will pass thereby regardless of the date, and this upon the presumed intention, that as he knew the will was not to take effect till after his

death, and he was preparing for that event, and providing for the disposition of his property afterwards, he intended that all the property he might then have should pass by this will, or he would have directed otherwise."

The rule of law upon this subject is stated by an eminent writer in the following words : " Under the old law, where a testator made a general gift of his real and personal estate, he was considered as meaning to dispose of these respective portions of property to the full extent of his capacity ; and, accordingly, such a gift in regard to real estate was read as a gift of the property belonging to the testator at the time of the execution of his will, (he being incapable of devising any other ; ) and as to the personalty, as a disposition of what he might happen to possess at the period of his decease."  1 Jarman on Wills, 287.

It will thus be seen, that the reason under the old law, why a general gift of the testator's real estate did not pass all he had at his decease, was not that he did not so intend ; but because, under the law, his intention could not be carried out for want of power or capacity in the testator to make the devise.

As the statute of our state before referred to, has conferred the power, the only valid reason which ever existed for a difference in the construction of general gifts by will of real and personal estate has ceased, and we are of opinion that, in this respect, wills of real and personal estate should be placed upon the same footing.

By reference to the language of the will in this case, we cannot see a reason to question the intention of the testator. After directing the payment of his debts, the will bequeaths to his wife " all the balance of his property, both real and personal, to have and to hold, to her own benefit, to the exclusion of all others."

We do not think language clearer or more explicit could have been used to show an intention to devise all the real estate of which the testator might die seized, regardless of the date of its acquisition by him.

If any authorities were needed to sustain the construction

of the law and of the will in accordance with the views here expressed, the decisions of the courts in Massachusetts and Missouri would be sufficient for that purpose.   24 Pick. 136; 12 Met. 175; 1 Cushing, 132; 4 Scam. R. 65.

The decisions referred to in 1 Call, 305, and 8 Cranch, 70, arising upon the statute of Virginia, do not necessarily conflict in principle with the view of the law taken by us.   In both these cases, the courts admit that the only question upon the subject is as to the intention of the testator, and whatever that may be, it must prevail.   In those cases it was held, that it appeared from the will and the surrounding circumstances, that after-acquired lands were not intended to be conveyed. We are not willing to assent to the opinion expressed in 1 Call, 305, that to show an intention to convey after-acquired land, the will must contain a clause to that effect.   Any other words which would show the intention as clearly would be as sufficient for the purpose.

The argument has been pressed upon us, that as by the law of Tennessee at the date of the will, the testator could not devise after-acquired land, we must presume that it was not his will or intention that they should pass by the devise.

But this argument is not entirely tenable.   The cases in the books are numerous where the intention of the testator to convey was manifest, but where that intention could not prevail, because it controverted the law, and we presume that the courts of Tennessee in regard to realty situated there, in giving a construction to this will, would decide that on the face of the will the intention is manifest, that the testator designed bequeathing to his wife all the real estate of which he might die seized, regardless of the date of its acquisition. It is true, that in Tennessee, at the date of this will, that intention, however clear, could not have been carried into effect, because the testator had no power at that time by the law of that state to make such a devise.   Whether or not the courts of that state would hold, that the subsequent statute, conferring the power upon the testator to make such a will, would justify them in sustaining this will as to realty situated there, and acquired after its date, we do not know.

But it is clear to our minds, that, as the will manifestly shows, that the intention of the testator was to give to his wife all the property of which he might die seized, whether owned at the date of it, or subsequently acquired, that intention must prevail and be carried into effect by the courts of this state in regard to realty situated here, there being no question whatever that the power existed under our laws to make such a will.    We are therefore of opinion, that the defendant in error is entitled by the laws of this state to the lands in controversy.

This view of the case makes it unnecessary to examine the question of republication.

Let the judgment be affirmed.